1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11   HUBEI GEZHOUBA SANLIAN        )    2:06-cv-01798-FMC-SSx
     INDUSTRIAL CO., LTD., a company )
     located in Hubei Province, People's )
12   Republic of China             )
                                    )
13   and                           )
                                    )
14   HUBEI PINGHU CRUISE CO.,       )    FINDINGS   OF   FACT   AND
     LTD., a company located in Hubei )   CONCLUSIONS OF LAW
15   Province, People's Republic of China )
                                    )
16           Plaintiffs,            )
                                    )
17   vs.                           )
                                    )
18   ROBINSON HELICOPTER            )
     COMPANY, INC., a California    )
19   corporation,                   )
                                    )
20           Defendant.             )
                                    )
21   _____)

22        The matter came on for trial before the Court, sitting without a jury, on

23   June 2 and 3, 2009.  At the conclusion of the presentation of evidence and

24   arguments, and after further post-trial briefing by the parties, the matter was taken

25   under submission.

26        The Court makes the following findings of fact and reaches the following

27   conclusions of law in support of its verdict in favor of plaintiffs and against

28   defendant in this action.

Findings of Fact

1. Plaintiff Hubei Gezhouba Sanlian Industrial Co., Ltd. ("Sanlian") is a business located at 17 Qingbo Road, Yichang City, Hubei Province, People's Republic of China ("PRC"). Plaintiff Hubei Pinghu Cruise Co., Ltd. ("Pinghu") is a business located at 87 Dongshau Avenue, Yichang City, Hubei Province, PRC.

2. Defendant Robinson Helicopter Company, Inc. ("RHC") is a California corporation with its principal place of business located at 2901 Airport Drive, Torrance, California.

3. Pinghu and the predecessor ("Sanlian Industries") of Sanlian filed an action on March 14, 1995 in the Los Angeles Superior Court entitled *China Gezhouba United Indus. Co., et al. v. Robinson Helicopter Co., Inc., et al.*, case number YC022805 ("California State Action"). The complaint alleged RHC had designed and manufactured a model R-44 helicopter that crashed into the Yangtze River in the PRC on March 22, 1994. The complaint in the California State Action alleged damages from the crash against RHC based on theories of negligence, strict liability, and breach of implied warranty.

4. RHC moved to stay or dismiss the California State Action on the ground of forum non conveniens. In support of its motion, RHC argued the PRC was a more suitable and convenient forum for the litigation, that the PRC has an independent judiciary, that the Chinese legal system follows due process of law, and that a Chinese court would exercise jurisdiction over the case. RHC agreed to submit to the jurisdiction of the appropriate court in China, toll the statute of limitations during the pendency of the California State Action, and to abide by any final judgment rendered in China. The motion was granted and the California State Action was stayed.

5. On January 14, 2001, Sanlian and Pinghu filed an action against RHC in the Higher People's Court of Hubei Province ("Higher Court") in the PRC, *Hubei*

2

1    *Gezhouba Sanlian Indus. Co., Ltd., et al. v. Robinson Helicopter Co., Inc.*, Case

2    No. (2001) E-Min-Si-Chu-1 ("PRC Action"), in which they sought damages

3    against RHC based on the March 22, 1994 crash of the R-44 helicopter into the

4    Yangtze River.

5        6.  On February 17, 2004, RHC was served with a Summons, Statement of

6    Complaint, Notification of Appearance, and related papers in the PRC Action

7    (Exs. 3A, 3C, 3E, 3K, 3M, 3O), which notified RHC of a trial or hearing set for

8    9:00 a.m. on March 25, 2004, before the Higher Court.  Service and notice of the

9    PRC Action is demonstrated by the following facts:

10        a.  On February 17, 2004, a process server left these documents with

11    RHC's receptionist at the front desk of its facility in Torrance, California.  This

12    was done after speaking to Elizabeth Rougeau, an employee of RHC and

13    administrative assistant to Tim Goetz, RHC's General Counsel and Chief

14    Financial Officer.

15        b.  Ms. Rougeau explained that the process server could leave

16    documents with the receptionist if he wanted to.

17        c.  The documents were placed in Mr. Goetz's in-box at the front

18    desk.  They were collected by Ms. Rougeau and she took possession of them the

19    same day (February 17, 2004).  She then put them on Mr. Goetz's desk.

20        d.  Mr. Goetz saw the English-language documents (Exs. 3A, 3C, 3E,

21    3K, 3M, and 3O) after they had been placed on his desk, and he was aware in

22    February of 2004 of the PRC Action and the trial or hearing in the PRC Action

23    set for March 25, 2004.  Mr. Goetz sent copies of the documents he received to

24    some attorneys in Hong Kong.  He discussed the documents with those attorneys.

25    Mr. Goetz also sent the documents to RHC's Chinese dealer, and they told Mr.

26    Goetz they would send a representative to the trial or hearing.  The representative

27    was barred from the hearing because she was not a party.

28        e.  The process server, through the United States Department of

1    Justice's Office of International Judicial Assistance, completed and returned to

2    the Higher Court the Certificate (Ex. 19-5) showing compliance with Article 5(a)

3    of the Hague Convention on the Service Abroad of Judicial and Extrajudicial

4    Documents in Civil or Commercial Matters ("Hague Convention"), April 24,

5    1967, 20 U.S.T. 361, T.I.A.S. No. 6638.

6           f. Both the United States and China are signatories to the Hague

7    Convention.

8           7. The Higher Court held a trial on March 25, 2004.  RHC did not appear

9    in the PRC Action and it failed to take any other steps to participate in it or to

10   request a continuance of the trial.  At the trial, a three-judge panel considered

11   extensive evidence submitted by the plaintiffs as well as evidence collected by the

12   Higher Court itself.  On December 10, 2004, the Higher Court issued its judgment

13   ("PRC Judgment") in favor of Sanlian and Pinghu and against RHC.  The

14   relevant portions of the PRC judgment, which is 36 pages long, provide as

15   follows:

16          a. Sanlian is the transferee of the substantive and procedural rights

17   of Sanlian Industries, which purchased the R-44 helicopter that crashed into the

18   Yangtze River on March 22, 1994.  Sanlian acquired its rights in this matter

19   through a capital transfer from Sanlian Industries, under which it acquired all

20   substantive and procedural rights concerning the subject matter of the claims in

21   the PRC Action.  Pinghu was the owner of the tourist boat, the "excursion

22   steamer 'Pinghu 2000,'" from which the R-44 helicopter was operating on March

23   22, 1994.

24          b. On the afternoon of March 22, 1994, the R-44 helicopter took off

25   from the Pinghu 2000 with three passengers.  Six minutes later, it crashed into the

26   Yangtze River.  The three passengers died.  The crash was the result of defects in

27   the production of the R-44 helicopter.

28          c. The Higher Court has jurisdiction and the case is not barred by

4

1    the statute of limitations.

2         d.  RHC was served with legal documents on February 17, 2004 in

3    the PRC Action, including a "summons of court session," as prescribed in the

4    Hague Convention.  RHC refused to appear in court at the trial held on March 25,

5    2004.

6         e.  Sanlian was awarded damages against RHC in the amount of

7    $261,000 (U.S.) with interest from March 23, 1993 (later corrected to the day

8    after the accident, *see infra*) "according to interest rates of loans for U.S. dollars

9    of the corresponding period of the People's Bank of China."  Sanlian was also

10   awarded damages for economic losses in the additional amount of $628,463.56,

11   with interest to be calculated from the day after the accident according to interest

12   rates of loans for U.S. dollars of the corresponding period of the People's Bank of

13   China.  RHC was also ordered to compensate Sanlian within 15 days of the

14   effective date of the PRC judgment for attorney's fees in the sum of $37,000

15   (U.S.).

16        f.  Pinghu was awarded damages against RHC for economic losses in

17   the amount of RMB 15,083,100 Yuan with interest from September 26, 1994 (the

18   date Pinghu was ordered by the PRC government to suspend its business

19   operations as a result of the crash) to be calculated according to interest rates for

20   loans for RMB of the corresponding period by the People's Bank of China.  The

21   award of economic losses to Pinghu was for the period from September 26, 1994

22   through December 31, 1995.  The PRC Judgment denied Pinghu's request for

23   economic losses for the years 1996 and 1997.  It also denied Pinghu's request for

24   attorney's fees and punitive damages against RHC.

25        8.  RHC did not challenge personal jurisdiction or the adequacy of service

26   of process.  RHC did not appeal from the PRC judgment.

27        9.  On April 20, 2005, RHC was served with Chinese and English

28   translations of the PRC Judgment.  On May 11, 2005, Mr. Goetz wrote to the

1  Chinese Ministry of Justice objecting to the PRC Judgment (Ex. 16), but he filed

2  no appeal.  Mr. Goetz also did not request an extension of time in which to file an

3  appeal.

4      10.  On March 16, 2006, the Higher Court issued a Civil Order correcting

5  the date on which interest should run on the PRC Judgment awarded Sanlian,

6  from March 23, 1993 to March 23, 1994, noting (in the certified English

7  translation of the order) "there exists a slip of the pen which should be rectified."

8      11.  On March 24, 2006, Sanlian and Pinghu filed their complaint in this

9  action seeking to enforce the PRC Judgment against RHC pursuant to the

10  Uniform Foreign Money-Judgments Recognition Act ("UFMJRA"), codified at

11  former California Code of Civil Procedure sections 1713-1713.8.[1]

12      12.  On March 22, 2007, this Court granted Summary Judgment in favor of

13  defendant on the grounds that the statute of limitations had expired before the

14  Chinese lawsuit was filed.

15      13.  On July 22, 2008, the United States Court of Appeals for the Ninth

16  Circuit issued its memorandum decision in this case.  It ruled Sanlian and

17  Pinghu's action against RHC in the PRC was not barred by the statute of

18  limitations.  It held RHC's agreement to toll the statute of limitations as a

19  condition to the forum non conveniens stay of the California State Action

20  remained in place, and "there was no basis for finding that enforcement of the

21  PRC Judgment would violate California's public policy against stale claims."

22

23                          Conclusions of Law

24

25      [1] Effective January 1, 2008, California's UFMJRA statute, § 1713 *et seq.,* was
   repealed and replaced with a new version, the Uniform Foreign-Country Money-
26  Judgments Recognition Act, § 1724 *et seq.*  The former UFMJRA applies to all
   actions commenced prior to January 1, 2008.  The former UFMJRA, therefore, applies
27  to the instant case, and all references in this order to the UFMJRA refer to the former
   statute, § 1713 *et seq.*
28

1    1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C.

2  § 1332(a)(2).  Venue is proper pursuant to 28 U.S.C. § 1391(a)(1).

3

4  **Service of process**:

5    2.  When service of process is effectuated using the procedures outlined in

6  articles 2 through 6 of the Hague Convention, the Central Authority of the state

7  addressed shall serve the documents "by a method prescribed by its internal law

8  for the service of documents in domestic actions upon persons who are within its

9  territory."  Hague Convention art. 5(a).

10    3.  Service of process in this case was sufficient to satisfy Federal Rule of

11  Civil Procedure 4(d)(3) as interpreted in *Direct Mail Specialists, Inc. v. Eclat*

12  *Computerized Tech.*, 840 F.2d 685, 688 (9th Cir. 1988).

13        a.  As with the receptionist in *Direct Mail*, Ms. Rougeau was so

14  integrated into the organization of RHC "as to render it fair, reasonable, and just

15  to imply the authority on [her] part to receive service."  *Id.*

16        b.  Actual receipt of the documents by Mr. Goetz is also a factor

17  showing proper service of process under *Direct Mail*.  He sent the documents to

18  attorneys in Hong Kong, discussed the documents with those attorneys, and

19  attempted to send a representative to the hearing.

20    4.  By returning the completed Certificate, the United States Central

21  Authority attested that service had been made according to the laws of the United

22  States and in compliance with article 5(a) of the Hague Convention.

23    5.  Under the Hague Convention, the completed Certificate is prima facie

24  evidence that service was in compliance with the Convention.  *Northrup King v.*

25  *Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1389 (8th

26  Cir. 1995).  The presumption of compliance is rebuttable.

27    6.  RHC had actual notice of the PRC Action, and could have challenged

28  service of process in the PRC Action by presenting evidence to rebut the

1   Certificate in the PRC Court.  It did not do so.

2      7.  The Hague Convention contains no provisions relating to the validity of

3   service of process.  It only provides mechanisms and procedures by which a

4   requesting authority may effect service abroad and receive certification that such

5   service was effected according to the laws of the state addressed.

6      8.  The PRC Court reasonably did not inquire further into the validity of

7   service on RHC.  Even if RHC had challenged the service, the PRC Court would

8   have been justified in upholding the validity of the Certificate.  *See, e.g.,*

9   *Northrup King*, 51 F.3d at 1389 (declining "to look behind the certificate of

10  service to adjudicate the issues of Spanish procedural law" raised by the parties);

11  *Resource Trade Finance, Inc. v. PMI Alloys*, 2002 WL 1836818 (S.D.N.Y. 2002)

12  (citing *Northrup King*; declining to look behind the Certificate when defendant

13  had not argued it lacked actual notice or was prejudiced by the allegedly missing

14  summary).

16      **The PRC Judgment**:

17      9.  The PRC Judgment was based on a review by the three-judge panel of

18  evidence presented at trial.  The panel considered the merits of the case and

19  subsequently ruled separately on each of the plaintiffs' claims for damages.  The

20  PRC Judgment is not simply a default judgment.

21      10.  Part Four of the Civil Procedure Law of the People's Republic of

22  China is entitled "Special Provisions for Civil Procedure of Cases Involving

23  Foreign Element."  Ex. 48; Zhonghua Renmin Gongheguo Minshi Susong Fa

24  [Civil Procedure Law (P.R.C.)] (adopted by the 7th Nat'l People's Cong., April 9,

25  1991, effective as of the date of issuance) ("PRC Civil Procedure Law"), Part

26  Four, art. 237.  Part Four, therefore, controls the instant case.

27      11.  Under article 249 of Part Four of the PRC Civil Procedure Law, a party

28  not domiciled in China may appeal a judgment of a Chinese court within 30 days

of the date the written judgment is served on the party.  The party may also request an extension of time to appeal which request may be granted at the discretion of the Chinese court.  RHC did not appeal the PRC Judgment within 30 days from the date of service of the PRC Judgment or at any time, nor did they request an extension of time to appeal.

12.  The PRC Judgment became final, conclusive, and enforceable under PRC law based on the nature of the PRC Judgment and the exhaustion of the time period for appeal.

13.  Under article 266 of Part Four of the PRC Civil Procedure Law, a party who has a legally effective judgment from a Chinese court against a non-Chinese party may apply for recognition and enforcement of the judgment directly to the foreign court that has jurisdiction.

14.  Part Four of the PRC Civil Procedure Law does not provide a statute of limitations for parties applying to foreign courts for recognition of judgments rendered in the PRC.[2]  The law of the foreign court where recognition is sought dictates the limitation period for filing recognition claims.

**Statute of limitations under the UFMJRA:**

15.  The UFMJRA states that a foreign judgment is "enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit[.]"  Former Cal. Civ. Proc. Code § 1713.3.

16.  California Civil Procedure Code § 337.5 applies a 10-year statute of limitations to actions on judgments of other states.  This 10-year period also applies to the filing of recognition actions under California's UFMJRA.  *Manco*

---

[2]  Defendant relies on article 219 of Part Three of the PRC Civil Procedure Law to argue that the six-month statute of limitations in that article bars Plaintiffs' recognition action in this Court.  However, article 219 is a general provision and does not apply in cases where there is a foreign element involved.

1    *Contracting Co. (W.W.L.) v. Bezdikian*, 195 P.3d 604, 615 (Cal. 2008).

2        17.  Plaintiffs' action for recognition of the PRC Judgment has been timely

3    filed.

4

5        **Civil action under the UFMJRA:**

6        18.  The UFMJRA, adopted in California and codified at former California

7    Code of Civil Procedure sections 1713 to 1713.8, applies to any foreign judgment

8    that is final, conclusive, and enforceable under the laws where rendered.  Former

9    Cal. Civ. Proc. Code § 1713.2.

10        19.  A civil suit for recognition of a foreign judgment may be brought

11   under the UFMJRA if the judgment is made by any governmental unit other than

12   the United States, and the judgment grants or denies recovery of a sum of money.

13   Former Cal. Civ. Proc. Code §§ 1713.1(1) and (2).

14        20.  The UFMJRA recites several exceptions under which a court must

15   deem a foreign judgment not conclusive or may choose not to recognize the

16   foreign judgment.[3]  The Court may only deny recognition if one of the exceptions

17   explicitly stated in the UFMJRA applies to the facts presented.[4]  *See Guiness PLC*

18   *v. Ward*, 955 F.2d 875, 885 (4th Cir. 1992).

19        21.  The UFMJRA states a foreign judgment is not conclusive if it was

20   ────────────────────

21        [3] While the UFMJRA specifically sets out the circumstances in which a foreign
     judgment will or may be denied recognition, it also allows the Court to recognize
22   additional bases for personal jurisdiction, and, thus, expand the circumstances where
23   a foreign judgment may be recognized.  Former Cal. Civ. Proc. Code § 1713.5.

24        [4] The purpose of the UFMJRA was "to codify the most prevalent common law
25   rules for recognizing foreign money judgments and thereby encourage the reciprocal
     recognition of United States judgments in other countries."  *Manco*, 195 P.3d at 608.
26   In order to accomplish the goal of encouraging reciprocal recognition of United States
27   judgments abroad, courts have interpreted the UFMJRA as "informing foreign nations
     of particular situations in which their judgments would definitely be recognized."
28   *Bank of Montreal v. Kough*, 430 F. Supp. 1243, 1249 (N.D. Cal. 1977).

rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.  Former Cal. Civ. Proc. Code § 1713.4(a)(1).[5]

22.  RHC has not presented any evidence, nor does it contend, that the PRC court system is one which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.  RHC cannot avail itself of this particular exception based on a challenge to the judgment at issue.  The Court comes to this conclusion based on the following:

a. The exception under § 1713.4(a)(1) applies when the "system" in which the foreign judgment was rendered does not provide impartial tribunals or procedures compatible with the requirements of due process of law.[6]

b. The exception does not provide a means for challenging a particular judgment.  To allow such a challenge would "convert[] every successful multinational suit for damages into two suits[,]" and allow parties "to object at the collection phase of the case to the procedures employed at the merits phase[.]"  *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 477-78 (7th Cir. 2000) (Posner, J., interpreting Illinois' UFMJRA).

c. The exception also applies if the procedures of the foreign court

_____

[5] Two other bases for finding a foreign judgment not conclusive, based on lack of personal jurisdiction or subject matter jurisdiction, are not applicable on the facts presented.  RHC consented to personal jurisdiction in the PRC when it requested a stay in the California State Action based on forum non conveniens and agreed to have the case tried in the PRC court system.  *See* Former Cal. Civ. Proc. Code § 1713.5(a)(3).  The PRC Court's jurisdiction over the subject matter in this case is uncontested.

[6] The Restatement (Third) of Foreign Relations Law states the same exception to recognition of a foreign judgment, but the exception is not mandatory and gives the court discretion not to recognize the foreign judgment.  Restatement (Third) of Foreign Relations Law § 482 (1987);  *see, e.g., Society of Lloyd's v. Borgers*, 127 Fed. Appx. 959, 959-60 (9th Cir. 2005).

1  system are not compatible with the requirements of due process of law.  Because

2  it is likely "that no foreign nation has decided to incorporate our due process

3  doctrines into its own procedural law[,]" courts have interpreted due process in

4  this UFMJRA exception to refer to "a concept of fair procedure simple and basic

5  enough to describe the judicial processes of civilized nations, our peers."

6  *Ashendon*, 233 F.3d at 476-77; *Shell Oil Co. v. Franco*, 2004 WL 5615657 (C.D.

7  Cal. 2004) (citing *Ashendon*).

8       d.  In addition, the foreign procedures need only be "compatible"

9  with the requirements of due process of law.  Courts have interpreted this to mean

10  that the foreign procedures are "'fundamentally fair' and do not offend against

11  'basic fairness.'"  *Ashendon*, 233 F.3d at 477; *Society of Lloyd's v. Turner*, 303

12  F.3d 325, 330 (5th Cir. 2002) (citing *Ashendon*).

13       e.  The PRC court system's use of the procedures of the Hague

14  Convention for service of process on foreign defendants does not offend notions

15  of basic fairness.  Use of the Hague Convention is compatible with the relaxed

16  notion of due process of law under *Ashendon.*

17      23.  The UFMJRA states a foreign judgment need not be recognized if the

18  defendant in the proceedings in the foreign court did not receive notice of the

19  proceedings in sufficient time to enable him to defend.  Former Cal. Civ. Proc.

20  Code § 1713.4(b)(1).[7]

21      24.  The purpose of the Hague Convention is to simplify and expedite the

22

23  _____

24  [7] Five other bases for non-recognition of a foreign judgment are not applicable
   on the facts presented.  There is no evidence to show the judgment was obtained by
25  fraud (§ 1713.4(b)(2)), that the cause of action in the PRC Action is repugnant to the
   public policy of the United States or California (§ 1713.4(b)(3)), that the judgment
26  conflicts with another final and conclusive judgment (§ 1713.4(b)(4)), that the PRC
   Action was contrary to some agreement by the parties to otherwise resolve the conflict
27  (§ 1713.4(b)(5)), or that jurisdiction was based only on personal service and was
   seriously inconvenient (§ 1713.4(b)(6)).
28

procedure of serving notice on foreign defendants, and "to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time."  Hague Convention preamble.

25.  Service of process in the PRC Action complied with the Hague Convention, and, therefore, by definition gave RHC sufficient time to defend itself in the PRC Action.

26.  Article 248 of Part Four of the PRC Civil Procedure Law requires the PRC Court allow 30 days for a defendant not domiciled in the PRC to submit a defense.  This period may be extended by request of the defendant at the discretion of the PRC Court.

27.  Mr. Goetz received notice of the PRC Action in the days following the February 17, 2004 service on RHC.  RHC, therefore, had actual notice 30 days prior to commencement of the PRC Action as required by PRC law.  It did not request an extension of time to file an answer to Plaintiffs' complaint.

**Conclusion:**

28.  Service of process was proper under Federal Rule 4, the 9th Circuit *Direct Mail* ruling, and the Hague Convention.

29.  The PRC Judgment was final, conclusive, and enforceable under the laws of the PRC and involved the granting of recovery of a sum of money.

30.  California's UFMJRA applies to this action seeking recognition of the PRC Judgment, and none of the stated exceptions to recognition in the UFMJRA are applicable on the facts presented.

31.  Plaintiffs are entitled to the issuance of a domestic judgment in this action in the amount of the PRC Judgment, with interest calculated as set forth in the PRC Judgment, for purposes of enforcement.

//

//

1       32.  Plaintiffs are directed to prepare a Judgment for the Court's signature

2   consistent with these rulings.

3

4       Dated this 21st day of July 2009.

5

6

7   FLORENCE-MARIE COOPER
    United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28